**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| PAULA EVETTE WILLIAMS-HOLLAND,　) | |
| 　　　　　　　　　　　　　　　) | |
| 　　　Plaintiff,　　　　　　　) | |
| 　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　) | No. 20-2387-TMP |
| 　　　　　　　　　　　　　　　) | |
| COMMISSIONER OF SOCIAL　　　　) | |
| SECURITY ADMINISTRATION,　　　) | |
| 　　　　　　　　　　　　　　　) | |
| 　　　Defendant.　　　　　　　) | |

**ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION**

On May 30, 2020, Paula Evette Williams-Holland[1] filed a Complaint seeking judicial review of a social security disability benefits decision. (ECF No. 1.) Holland seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. For the reasons below, the decision of the Commissioner is REVERSED and REMANDED.[2]

---

[1] In her hearing testimony, the claimant indicated that she prefers to be referred to as "Holland." (R. 37.)

[2] After the parties consented to the jurisdiction of a United States magistrate judge on April 7, 2021 this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 18.)

## I.   BACKGROUND

On March 7, 2017, Holland applied for Social Security disability insurance benefits under Title II of the Act. (R. 22.) That same day, she filed for supplemental security income as well. (Id.) In all applications, she alleged a disability beginning on March 2, 2012. (Id.) Holland's initial applications were all denied on June 2, 2017, and after reconsideration on September 1, 2017. (Id.) Holland then requested a hearing on October 3, 2017, and that hearing was held on January 3, 2019, in Memphis, Tennessee. (Id.)

After the hearing, the ALJ preliminarily determined that Holland met the insured status requirement of the Act. (R. 24.) The ALJ then used the five-step analysis to conclude that Holland was not disabled from May 17, 2017, through the date of the ALJ's decision. (R. 24-29.) For the first step, the ALJ determined that Holland had not engaged in any substantial gainful activity since March 2, 2012, the alleged onset date of her disability. (R. 24.) For the second step, the ALJ found that Holland had the following severe impairments: "carpal tunnel syndrome and obesity." (R. 25.) Holland also alleged disability stemming from high blood pressure, a bone spur in her right heel, Bell's palsy, right shoulder pain, and arthritis. (R. 25-26.) Regarding her high blood pressure, the ALJ concluded that it did not impose more than a minimal effect on her work ability due to effective treatment with medication. (R.

-2-

25.) The ALJ found that the bone spur was not disabling, since Holland could use an "air heel" to walk without pain and because the issue had significantly improved since its initial flare up. (Id.) Holland's Bell's palsy was found to not be disabling, since a consultative examiner found it did not impose any visual limitations. (Id.) The ALJ dismissed the right shoulder pain as well, since "pain is a symptom, not a medically determinable impairment." (R. 26.) Finally, the ALJ noted that the record contained no evidence of arthritis. (Id.)

At the third step, the ALJ concluded that Holland's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Accordingly, the ALJ then had to determine whether Holland retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Holland] can perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except she can only frequently handle and finger bilaterally. [Holland] does not have a severe impairment or combination of impairments that would prevent her from performing the standing, walking, lifting, and carrying necessary for medium work. However, her bilateral carpal tunnel syndrome and obesity reasonably preclude her from performing the lifting and carrying necessary for heavy work. Additionally her carpal tunnel syndrome symptoms reasonably restrict her ability handle and finger [sic]. Accordingly, the undersigned limits the claimant to medium work, except frequent handling and fingering bilaterally.

-3-

(R. 28.) Pursuant to 20 C.F.R. § 404.1567(c), medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

In reaching this RFC determination, the ALJ discussed Holland's testimony and the medical evidence in the record. (R. 18-25.) The ALJ summarized Holland's account of her symptoms and condition as follows:

> [Holland] alleges disability due to carpal tunnel syndrome. She alleges that it causes her hands to become weak and numb, which affects her ability to lift more than ten pounds, reach, grip objects, and perform repetitive movements with her hands. Furthermore, she alleges that carpal tunnel syndrome interferes with her activities of daily living. At hearing, she testified that she has to take regular breaks, put her arms in splints, and rest them on a pillow when doing housework, dishwashing, and her hair. She also testified that she has a hard time wringing out her towel to wash and buttoning her clothes. She contends that some days are worse than others are, and that she has about three good days a week.

(R. 27.) The ALJ concluded that "the claimant's bilateral carpal tunnel syndrome could reasonably cause her alleged symptoms. However [] her statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence of record." (Id.) The ALJ, citing only to a 2015 examination, noted that "[Holland's] hands are not weak or clumsy, her nerve function is normal, and her AIN, PIN, ulnar, and radial motor function is good." (Id.)

The ALJ then considered three pieces of medical opinion evidence. First, the ALJ assigned "great weight" to Dr. Ammie

-4-

Maravelli's opinion. (Id.) Dr. Maravelli served as the state agency
medical consultant at the reconsideration level. (Id.) After
reviewing Holland's case, Dr. Maravelli concluded that Holland
could perform medium work, and that her ability to push and pull
with her bilateral upper extremities is limited. The ALJ explained
that this opinion was entitled to great weight because Dr.
Maravelli "supported his opinion and his opinion is consistent
with the medical evidence of record." (Id.) Second, the ALJ
assigned partial weight to the opinion of Dr. H. Blumenfeld, who
served as the state agency medical consultant at the initial level.
Dr. Blumenfeld found that Holland could only perform light work,
but agreed with Dr. Maravelli on certain limitations. (R. 28.) The
ALJ gave great weight to the portions of Dr. Blumenfeld's opinion
that agreed with Dr. Maravelli's, due to their consistency and
support in the record. (Id.) However, he gave little weight to
"the remainder of Dr. Blumenfeld's opinion." (Id.) Finally, the
ALJ considered the opinion of consultative examiner Dr. Lewis
Loskovitz. He gave the opinion little weight, stating that:

> [Dr. Loskovitz] opined that the claimant can only
> occasionally lift 10 pounds, cannot frequently lift 10
> pounds, can stand for two to four hours, and can sit for
> three to four hours. Dr. Loskovitz's own exam findings
> fail to support the extreme limitations he opines. For
> example, Dr. Loskovitz found that the claimant was in no
> acute distress, had full range of motion of all her
> extremities, walked with a normal gait, had a normal
> stance and musculature, had 5/5 strength, good grip
> strength, good use of hands, and normal neurologic
> findings. These findings are inconsistent with his

opinion. Furthermore, Dr. Loskovitz's opinion is not consistent with the medical evidence of record discussed above and the state agency medical consultant's opinions.

(R. 28.) The ALJ then summarized his findings and decision as follows:

> [Holland} can perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except she can only frequently hand and finger bilaterally. The claimant does not have a severe impairment or combination of impairments that would prevent her from performing the standing, walking, lifting, and carrying necessary for medium work. However, her bilateral carpal tunnel syndrome and obesity reasonably preclude her from performing the lifting and carrying necessary for heavy work. Additionally, her carpal tunnel syndrome symptoms reasonably restrict her ability handle [sic] and finger. Accordingly, the undersigned limits the claimant to medium work, except frequent handling and fingering bilaterally.

(R. 28.) With this RFC finding, the ALJ then moved to step four. At step four, the ALJ found that Holland was capable of performing her past relevant work as an appliance line assembler. (Id.) Nancy Hughes, a vocational expert, went through four hypothetical RFC classifications for the ALJ, testifying whether or not jobs for each existed in the national economy. (R. 62-70.) Hughes testified that she believed that a hypothetical person with Holland's profile who could "frequently" handle and finger would be able to perform her past relevant work as an appliance line assembler, but not any other of Holland's past jobs. (R. 64.) A hypothetical person with Holland's profile who could only "occasionally" handle and finger would not be able to perform any of Holland's past relevant work.

(R. 64.) Ultimately, the ALJ concluded that Holland could "frequently" handle and finger. (R. 29.) Thus, Hughes had testified that "a hypothetical person of the claimant's vocational profile and residual functional capacity could return to their past relevant work," and the ALJ gave this testimony "great weight." (Id.) Because of this, the ALJ determined that Holland was not disabled from March 2, 2012, through the date of the decision and did not proceed to step five.

On March 7, 2019, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Holland's request for review. (R. 1.) Holland now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Holland makes two arguments. First, she argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not properly weigh Dr. Loskovitz's opinion. (ECF No. 19 at 6.) Second, she argues that the ALJ improperly dismissed her own account of her symptoms and limitations. (Id. at 10.)

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794

(6th Cir. 1994) (quoting <u>Smith v. Sec'y of Health & Human Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in

-9-

the region where such individual lives or in several
regions of the country.

Under the Act, the claimant bears the ultimate burden of
establishing an entitlement to benefits. Oliver v. Comm'r of Soc.
Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is
on the claimant to prove she has a disability as defined by the
Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th
Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v.
Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir.
1990). If the claimant is able to do so, the burden then shifts to
the Commissioner to demonstrate the existence of available
employment compatible with the claimant's disability and
background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of
Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a
five-step sequential analysis set forth in the Social Security
Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the
claimant must not be engaged in substantial gainful activity. See
20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be
made that the claimant suffers from a severe impairment. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the
ALJ determines whether the impairment meets or equals the severity
criteria set forth in the Listing of Impairments contained in the
Social Security Regulations. See 20 C.F.R. §§ 404.1520(d),
404.1525, 404.1526. If the impairment satisfies the criteria for

a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C.  Medical Opinion Evidence

As a preliminary matter, because Holland filed her application for benefits before March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1527 in considering medical opinions and prior administrative medical findings in the record.[3] In formulating an RFC assessment under these regulations, "the ALJ

---

[3]For claims filed on or after March 27, 2017, new regulations that abandon the old scheme of weighing medical opinion evidence apply. See 20 C.F.R. § 404.1520c.

evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375 (6th Cir. 2013). The Sixth Circuit Court of Appeals has explained that:

> An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have[,] an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). A treating source's opinion is due controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). For nontreating and nonexamining sources, the Commissioner should

"weig[h] these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating source is not deemed controlling." Id. at 376. Despite these requirements, "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his *treating sources*." Norris, 461 F. App'x at 439. Even where the ALJ "could have provided greater detail," the decision will still survive review "so long as the ALJ's decision adequately explains and justifies its determination as a whole." Id.

Holland argues that the ALJ did not properly weigh the opinion of Dr. Lewis Loskovitz, an examining but nontreating opinion source, when compared with the opinions of Drs. Maravelli and Blumenfeld, who did not examine her. (ECF No. 19 at 9.) While "as a general matter" a nontreating source's opinion is given greater weight than a nonexamining one, "it is not a *per se* error of law . . . for the ALJ to credit a nonexamning source over a nontreating source." Norris, 461 F. App'x at 439. Here, the ALJ's decision to credit the opinions of Dr. Maravelli and Dr. Blumenfeld over Dr. Loskovitz was supported by substantial evidence. The ALJ noted that Dr. Loskovitz's opinion was inconsistent with the medical record as a whole and with his own examination. (R. 28.) Dr. Maravelli and Dr. Blumenfeld, while differing on the exact limitations that Holland should work under, both disagreed with Dr. Loskovitz's opinion, believing that it overstated Holland's

-13-

limitations, lacked substantial support from the examination itself, and was internally inconsistent. (R. 96-97; 83.) The ALJ noted that despite the "extreme limitations" he ordered, Dr. Loskovitz "found that the claimant was in no acute distress, had full range of motion of all her extremities, walked with a normal gait, had a normal stance and musculature, had 5/5 strength, good grip strength, good use of hands, and normal neurological findings." (R. 28.) His ultimate restrictions were much more severe than either those recommended by Dr. Maravelli or Dr. Blumenfeld. (R. 27-28.) While the "ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of [examining] versus nonexamining sources."[4] Norris, 461 F. App'x at 440; see also Smith, 482 F.3d at 876 ("this reasons-giving requirement exists only for § 404.1527(d)(2), and not for

---

[4]Claimant briefly argues that the ALJ selectively weighed inconsistency against the opinions. (ECF No. 19 at 9.) The ALJ considered the inconsistency of Dr. Loskovitz's opinion with the other opinions as undercutting the reliability of Dr. Loskovitz, but did not seem to consider the inconsistencies between the other opinions as counting against them. (Id.) This argument fails for two reasons. First, the ALJ explained that Dr. Loskovitz's opinion was inconsistent with the record as a whole, as well as with the other opinions. (R. 27-28.) The parts of the other opinions that he credited were those consistent with the record as a whole. (Id.) Second, there is no special obligation imposed on the ALJ beyond "adequately explain[ing] and justf[ying] its determination as a whole" when considering a nontreating source opinion. Norris, 461 F. App'x at 440.

the remainder of § 404.1527(d).") Instead, the ALJ must merely consider the nature of the treatment relationship, the evidence supporting the opinion, the specialization of the source, and the consistency of the opinion with the record as a whole to guide their ultimate determination of weight. 20 C.F.R. § 404.1527(c). The ALJ did just that by noting the inconsistencies of Dr. Loskovitz's opinion, his limited relationship with Holland, and the conflicts between his opinion and the record as a whole. (R. 28.) This is evidence that "a reasonable mind might accept as adequate to support a conclusion." Kirk, 667 at 535. Further, The Sixth Circuit has upheld similar decisions where an examining source was given little weight due to inconsistencies with their own examination and the overall record. See Norris, 461 F. App'x at 439; Ealy, 594 F.3d at 514-15. Because the ALJ properly evaluated Dr. Loskovitz's opinion considering the record as a whole, the ALJ's decision to afford Dr. Loskovitz's opinion little weight is supported by substantial evidence.

**D.   Claimant's Subjective Account of Her Symptoms**

Holland also argues that the ALJ failed to properly evaluate her own account of her symptoms and pain. (ECF No. 17 at 10.) She suggests that the pain from her carpal tunnel syndrome, and the frequent breaks in activity that it causes, is a significant cause of her disability.

While "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability," pain or symptoms stemming from an underlying condition can help establish that a claimant is disabled. Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). In order to properly evaluate subjective accounts, the courts use a two-pronged analysis. First, the ALJ should examine "whether there is objective medical evidence of an underlying condition." Id. Second, after establishing an underlying medical condition, the court must either find, "1) objective medical evidence to confirm the severity of the alleged pain arising from that condition or 2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." Swain v. Comm'r of Soc. Sec., 297 F. Supp. 2d 986, 988 (N.D. Ohio 2003) (quoting Duncan, 801 F.2d at 853.); see also Wilson v. Comm'r of Soc. Sec., 783 F. App'x 489, 502 (6th Cir. 2019). Where objective medical evidence is lacking, a claimant may nevertheless "experience pain severe enough to impose limitations on the capacity for work." Cross v. Comm'r of Soc. Sec., 473 F. Supp. 2d 724, 732 (N.D. Ohio 2005); 20 C.F.R. § 416. 929(c)(2) ("we will not reject your statements about the . . . effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."); see also Gentry v. Comm'r of Soc. Sec., 741 F.3d

-16-

708, 726 (6th Cir. 2014). Determining whether symptoms are indeed severe enough to constitute disability in the absence of objective medical evidence requires the ALJ to evaluate the intensity and persistence of an individual's symptoms. Cross, 473 F. Supp. at 732;[5] Soc. Sec. Ruling (SSR) 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017). Agency guidance provides factors that an ALJ must consider when evaluating intensity and persistence. A claimant's daily activities, medications, treatments, and aggravating factors must all be considered before issuing a finding on the subjective intensity and persistence of a claimant's symptoms. SSR 16-3p, 2017 WL

---

[5]Many cases cited in this section refer to subjective symptom evaluation using language of "credibility." This discrepancy is due to a change in internal agency guidance regarding the use of the term "credibility," which the agency believed was leading ALJs to improperly assess a claimant's character. Accordingly, the agency replaced its old guidance, which used the term "credibility," with new guidance that sought to "clarify" what should be considered and what was required of ALJs when assessing subjective complaints of pain or other symptoms. Compare Soc. Sec. Rul. (SSR) 96-7p, 1996 WL 374186 (Jul. 2, 1996) with Soc. Sec. Rul. (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). However, Sixth Circuit district courts have noted that "[the new ruling's] purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantively change them." Brothers v. Berryhill, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio Jun. 22, 2017); see also Dooley v. Comm'r of Soc. Sec., 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (finding that 16-3p "does not alter the rule that the ALJ should consider 'possible reasons' why a claimant failed to seek medical treatment 'consistent with the degree of his or her complaints.'"); Gilliam v. Comm'r of Soc. Sec., No. 2:18-cv-12793, 2019 WL 6112696, at *10 (E.D. Mich. Jul. 10, 2019) ("Many courts have recognized that SSR 16-3p changes little of substance and instead tinkers with semantics" and recognizing that "prior caselaw consequently remains valid") (collecting cases).

5180304 at *6. An ALJ must "clearly state [their] reasons" for these findings, Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994) (citing Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir. 1987), and these findings must be supported by substantial evidence, Walters, 127 F.3d at 531. Merely "cherry-pick[ing] select portions of the medical record to discredit the claimant's complaints of pain" is not enough; the factors described above must be considered. Jennings v. Soc. Sec. Admin., No. 3:19-cv-00065, 2020 WL 1808507, at *10 (M.D. Tenn. Feb. 25, 2020) (quoting Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013)).

The ALJ here found that Holland's "bilateral carpal tunnel syndrome could reasonably cause her alleged symptoms," satisfying the first prong of the Duncan test. (R. 27.) However, he concluded that "her statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence of record." (Id.) To support this finding, the ALJ cited to one September 2015 examination in which "physical examination revealed that [Holland's] hands are not weak or clumsy, her nerve function is normal, and her AIN, PIN, ulnar, and radial motor function is good." (R. 27.) This sentence shows the ALJ considering the objective medical evidence of Holland's subjective symptoms and pain, as is proper and required under Duncan. But where the individual's statements about the intensity,

-18-

persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must "consider other information and factors which may be relevant to the degree of pain alleged." Patton v. Comm'r of Soc. Sec., No. 4:20-CV-00141-HBB, 2021 WL 4507463, at *7 (W.D. Ky. Oct. 1, 2021).

The ALJ did not explicitly consider other information. The ALJ included no "unified statement of reasons for discounting [subjective symptoms]" beyond stating that Holland's allegations were inconsistent with the record. Cross, 473 F. Supp. at 733. To support this, the ALJ merely cited one examination from two years prior and gave no indication of his impression of Holland's testimony, the internal consistency of her statements, her compliance with treatment plans, her willingness to seek treatment in general, or other factors beyond briefly summarizing her testimony in his opinion. (R. 27.) No "specific reasons for the weight given to the individual's symptoms" were provided, other than citing to one piece of objective medical evidence. SSR 16-3p, 2017 WL 5180304 at *10. The regulation requires more. Id. At *7 (noting that the agency will consider daily activities, medications, treatments, and measures the individual uses to treat the pain in evaluating intensity, persistence, and limiting effects); see also Rogers, 486 F.3d at 248-49 (ALJ's credibility determination inadequate where the ALJ improperly focused purely

on objective medical evidence). Given that the agency has provided "a clear directive to pay as much attention to giving reasons for discounting claimant [subjective symptoms] as must be given to reasons for not fully accepting the opinions of treating sources," Cross, 373 F. Supp. at 733, citing to one examination in the record and "simply recit[ing] the factors that are described in the regulations for evaluating symptoms" is not enough to assure the court that the entire record was considered in evaluating Holland's symptoms. Compare SSR 16-3p, 2017 WL 5180304 at *1 (listing evaluating factors of "intensity, persistence, and limiting effects of the individual's symptoms") with (R. 27) ("her statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence of record."); see also Felisky, 35 F.3d at 1039-40 (noting that where "[the ALJ's] opinion explicitly finds only the content of the medical record insufficient" that this is "not the end of the analysis") (citing 20 C.F.R. § 404.1529(c)(2)); Auer, 830 F.2d at 595 (upholding a decision where "the [ALJ] cited very specific examples of Auer's lack of credibility on certain issues" including medical treatment, performance of semi-skilled labor, and living in an unhealthy environment).

This insufficient articulation constitutes a "compelling reason" to remand this case for further consideration, especially because the ALJ's opinion is unclear about how or whether any other

evidence was considered at all. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001); see also Jennings, 2020 WL 1808507, at *11 ("the question is not whether substantial evidence supports the alleged limiting effect . . . it is whether the ALJ *pointed to* substantial, legitimate evidence to support his findings with respect to those symptoms"). Indeed, the Commissioner's brief works against their argument in this case. The Commissioner offers numerous arguments in support of the ALJ's opinion, including noting Holland's lack of desire to receive treatment for carpal tunnel, (ECF No. 24 at 6), arguing that her household activities cut against the validity of her subjective symptoms, (id.), and pointing to other treatment notes, (id. at 5). Discussion of all these points would have been proper (and consideration of some of them is required) if done by the ALJ. However, these points do not appear in the ALJ's opinion. "Principles of administrative law preclude the court from inferring a reason for the ALJ's credibility determination or finding that the ALJ's discussion of the evidence implicitly supplies reasons for rejecting the claimant's testimony." Blom v. Barnhart, 363 F. Supp. 2d 1041, 1055 (E.D. Wis. 2005).

To be clear, the court is not deciding whether Holland's statements or accounts of her symptoms are correct or not. Garner, 745 F.2d at 387 ("the court may not . . . decide questions of [subjective symptom evaluation].") That decision is for the ALJ. But here, his insufficient articulation of that decision "denotes

a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."[6] <u>Wilson</u>, 783 F. App'x at 504 (quoting <u>Cole</u>, 661 F.3d at 937). Because the ALJ failed to follow agency rules and procedures, it is ordered that Holland's application for disability benefits be remanded for the ALJ to properly evaluate Holland's subjective account of her symptoms.

### III. CONCLUSION

For the reasons above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

---

[6]To the extent harmless error review applies here, the court finds that the error was not harmless. <u>Compare</u> <u>Johnson v. Comm'r of Soc. Sec.</u>, 535 F. App'x 498, 507 (6th Cir. 2013) ("harmless error applies to [credibility] determination[s], and the ALJ's decision will be upheld as long as substantial evidence remains to support it.") (citing <u>Ulman</u>, 693 F.3d at 714) <u>with</u> <u>Haeuptle v. Saul</u>, 3:30-cv-00284, 2021 WL 2935350 (M.D. Tenn. Jul. 13, 2021) ("<u>Ulman</u> says that if the ALJ *cited* substantial, legitimate evidence to support her conclusions, the Court is not to second-guess the ALJ's determination") (emphasis added); <u>Jackson v. Comm'r of Soc. Sec.</u>, No. 2:14-cv-801, 2015 WL 5634671, at *9 (S.D. Ohio Sept. 25, 2015) ("to recognize substantial evidence as a defense to non-compliance with Agency regulations 'would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory.'") (quoting <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 546 (6th Cir. 2004)). Here, the ALJ did not discuss or support his opinion of the effects of Holland's symptoms with substantial evidence from the record. Such error undermines the purpose of regulatory articulation requirements, which is to provide the "clarity in later proceedings" that is "absolutely essential for meaningful appellate review." <u>Rogers</u>, 486 F.3d at 248, n.5 (citing <u>Hurst v. Sec'y of Health & Human Servs.</u>, 753 F.2d 517, 519 (6th Cir. 1985)).

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 6, 2021
Date